# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SOONHEE KIM | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 17-16180 |
| | * | |
| KAMAU BAKARI FERDINAND | * | SECTION "L" (5) |

## ORDER AND REASONS

## I.   INTRODUCTION

This case initially involved a claim brought under the Hague Convention on the Civil Aspects of International Child Abduction. Soonhee Kim ("Petitioner" or "Mother") is the mother of L.J.F. (born in 2007) and A.J.F. (born in 2009) (the "children"). On December 9, 2017, she petitioned this Court to return her two children to Thailand, asserting that on or before August 13, 2017, Kamau Bakari Ferdinand ("Respondent" or "Father"), the children's father, wrongfully retained them in Louisiana.

This matter was tried before the Court, sitting without a jury, on February 1, 2018. The purpose of the trial was not to determine the children's parental custody, but rather to identify the children's habitual residence. Based on the record presented at trial, the Court concluded that the children's habitual residence is Thailand and ordered their prompt return. *See generally Soonhee Kim v. Ferdinand*, No. CV 17-16180, 2018 WL 721455 (E.D. La. Feb. 6, 2018).

Because the Petitioner was the prevailing party, she is now entitled to attorney's fees and costs under Article 26 of the Convention and 42 U.S.C. § 11607(b). On February 27, 2018, Plaintiff filed the instant motion for attorney's fees and necessary expenses, requesting $89,310.08 that included court costs, legal fees, and travel costs between Thailand and the United States. *See* Rec. Doc. 57. Respondent opposes this motion, arguing that Petitioner's attorney's fees are

excessive and such award is "clearly inappropriate" under 42 U.S.C. § 11607(b)(3). Rec. Doc. 58. Having reviewed the parties' submissions and the applicable law, the Court now issues this Order and Reasons.

## II.    LEGAL STANDARD

The 1980 Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention"), and its implementing legislation, the International Child Abduction Remedies Act ("ICARA"), contain a one-way fee shifting provision, providing an award of necessary fees and expenses to a prevailing petitioner. *Salazar v. Maimon*, 750 F.3d 514, 519–20 (5th Cir. 2014); *see also* Hague Convention, art. 26; 42 U.S.C. § 11607(b)(3). Specifically, ICARA requires:

> Any court ordering the return of a child pursuant to an action brought under section 11603 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster homes or other care during the course of the proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

42 U.S.C. § 11607(b)(3).

Under the Hague Convention, an award of fees and costs serves two purposes: (1) "to restore the applicant to the financial position he or she would have been in had there been no removal or retention," and (2) "to deter such removal or retention." Hague Convention; Text and Legal Analysis, 51 Fed. Reg. 10494–01, 10511 (Mar. 26, 1986). "The sparse legislative history of the [ICARA's fee-shifting] provision reveals it was 'intended to provide an additional deterrent to wrongful international child removals and retentions.'" *Souratgar v. Lee Jen Fair*, 818 F.3d 72, 80 (2d Cir. 2016) (quoting H.R. Rep. No. 100–525, at 14 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 386, 395). Nonetheless, in this fee-shifting context, "Congress built a safety valve

2

directly into the statute, leaving it to courts to determine when an award of expenses would be clearly inappropriate, notwithstanding the additional deterrence value such expenses might provide." *Id.*

A party seeking an award of attorney's fees must submit adequate evidence detailing the hours worked and his or her rates. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). It is the Respondent's burden to show that an award of attorney's fees and costs would be "clearly inappropriate." *Saldivar*, 879 F. Supp. 2d at 632.

**III. DISCUSSION**

Petitioner claims that she is entitled to attorney's fees and costs under 42 U.S.C. § 11607(b)(3). She requests that Respondent pays her $89,310.08 for expenses incurred from bringing this ICARA action. Specifically, she expended $1,098.50 for court costs; $77,957.77 for legal fees and expenses; and $10,253.81 for travel.[1] *See generally* Rec. Doc. 57. Petitioner asserts that her attorney's fees—from Mr. Stern, Mr. Cullen, Ms. Powers, Mr. Yaap, and Mr. Phongordete—are reasonable when tested under the lodestar method. In this case, Petitioner's attorneys have charged her at the following rate and amount:

| **Attorney** | **Hours** | **Rate** | **Total** |
|---|---|---|---|
| C. Stern | 27.5 | $410.00 | $11,275.00 |
| S. Cullen | 50 | $550.00 | $27,500.00 |
| K. Powers | 44.7 | $425.00 | $18,997.50 |
| M. Yaap | 44.2 | $355.00 | $15,691.00 |
| T. Phongordete | | Fixed Fee | $2,500.00 |
| **TOTAL:** | **166.4** | | **$75,963.50** |

---

[1] The court costs and travel costs are documented with receipts and invoices and appear reasonable and accurate. Therefore, in this section, the Court will only focus on the reasonableness of attorney's fees.

3

Respondent argues that Petitioner's attorney's fees are excessive, especially compared to the New Orleans legal market. Furthermore, Respondent argues that his "crippling financial" status does not afford him the ability to cover Petitioner's expenses. Respondent represents that he has no "savings, investments, or the promise of future income." Rec. Doc. 58 at 16. He recently resigned his position as a teacher in New Orleans so he could return to Thailand with the children. According to Respondent, he relies on "secured and unsecured loans for living expenses and litigation expenses incurred in this case." *Id.* at 17. He submitted an affidavit declaring negative net worth of $81,914.40. Rec. Doc. 58-3. As indicated on his financial statement, chief among his liabilities are unsecured loans of $50,000.00 and debt from litigation fees and costs of $52,943.30. *Id.* Therefore, given his financial hardship, Respondent claims that it would be clearly inappropriate to require him to pay Petitioner's fees and costs from this case.

The Court's analysis of an award for attorney's fees proceeds in two parts. First, the Court determines whether Petitioner's attorney's fees are in fact reasonable. Second, the Court examines whether it would be "clearly inappropriate" under 42 U.S.C. § 11607(b)(3) to require Respondent to reimburse Petitioner given his claimed financial status. Finally, after due consideration of the totality, the Court apportions an equitable award between Petitioner and Respondent for attorney's fees and costs.

  **A.**   **Reasonable Attorney's Fees**

    1.   <u>Lodestar Method</u>

The lodestar method is traditionally used to determine an appropriate attorney's fees award in Hague Convention cases. *See Salazar*, 750 F.3d at 523; *see e.g.*, *Freier v. Freier*, 985 F. Supp. 710, 712 (E.D. Mich. 1997) (determining the amount of "reasonable attorney's fees" under ICARA by employing the lodestar formula); *Berendsen v. Nichols*, 938 F. Supp. 737, 738 (D. Kan. 1996)

(same). Moreover, the lodestar approach is "generally applicable to all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Hensley v. Eckhart*, 461 U.S. 424, 433 n.7 (1983).

Under the lodestar method, the amount of a fees award is calculated by "multiplying the reasonable hourly rate by the number of hours reasonably expended." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 282 (5th Cir. 2008). This is then tested based on an analysis of twelve factors known as the *Johnson* factors, which was first formulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974). These factors include (a) the time and labor required; (b) the novelty and difficulty of the questions; (c) the skill required to perform the legal service properly; (d) the preclusion of other employment by the attorneys due to acceptance of the case; (e) the customary fee; (f) whether the fee is fixed or contingent; (g) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (h) the experience, reputation, and ability of the attorneys; (i) the "undesirability" of the case; (j) the nature and length of the professional relationship with the client; and (k) awards in similar cases. *Id.* at 717–19; *see also Von Clark v. Butler*, 916 F.2d 255, 258 (5th Cir. 1990). A review of these factors as they apply to the facts of this case is appropriate.

### a. Time and labor required

Petitioner's attorneys have logged 166.4 hours in this case. Hague Convention cases are generally expedited in nature—with six weeks recommended for resolution. *See* Hague Convention, arts. 2, 11. The United States Supreme Court has instructed lower courts "to decide [Hague Convention] cases [on international child abduction] as expeditiously as possible." *Chafin v. Chafin*, 568 U.S. 165, 179 (2013). Recognizing that expediency in resolving Hague Convention cases is in the interest of justice, the Supreme Court has even suggested to the Advisory

Committees on Federal Rules of Civil and Appellate Procedures to consider "whether uniform rules for expediting Convention proceedings are in order." *Id.* at 182–83 n.3. In accordance with the Supreme Court's guidance, this Court prioritized the proceeding to determine the children's habitual residence and ordered parties to comply with a fast and abbreviated schedule.

Petitioner filed this case on December 9, 2017. Three days later, at the Court's direction, the United States Marshal served Respondent with Petitioner's complaint. The Court scheduled a show cause hearing for December 19, 2017. At the show cause hearing, the parties agreed on a trial date of January 26, 2018. On January 22, 2018, after Petitioner made several motions *in limine*, Respondent filed a motion to continue trial so counsel can have additional time to prepare. The Court granted Respondent's motion and continued trial to February 1, 2018. On January 26, 2018, the Court conducted a hearing by telephone regarding Petitioner's motion *in limine* to exclude video recordings of the Mother and children. The Court granted in part and denied in part Petitioner's motion. After addressing all pre-trial motions, trial commenced on February 1, 2018 and lasted approximately seven hours.

This case required counsel to, *inter alia*, investigate claims asserted by the Mother (that the Father wrongfully removed the children) and allegations by the Father (that the Mother subjected the children to abuse and abandonment in Thailand); conduct legal and factual research; draft motions and opposition briefs; prepare and attend the Mother's deposition; prepare the Mother, as a witness, for trial; consult a Thai law expert; compile an in-depth bench book; and prepare, participate and attend the show cause hearing and full-day trial.

      b.  *Novelty and difficulty of the questions*

Petitioner argues that Respondent mounted a vigorous opposition, which increased the workload for the attorneys in this case. Despite the parties' contentions, the Court finds that this

is a straightforward Hague Convention case that applied settled law: all defenses advanced by Respondent fall under established exceptions for an ICARA case, *i.e.*, mature child's objection, consent or acquiescence, and grave risk of harm.

Petitioner highlights that Thailand is one of the newest signatories of the Hague Convention and thus asserts that this case presents a novel issue of first impression. The United States and Thailand ratified the treaty in 2016.[2] Indeed, from the Court's research, this may be the first ICARA case involving wrongful removal of children from Thailand. Nevertheless, state and federal courts often address Hague Convention issues. Petitioner's case, albeit from Thailand, did not deviate from settled precedent.[3]

### c. *Skill required to perform the legal service properly*

This factor requires the Court to assess "the attorney's work product, . . . his preparation, and general ability before the court." *Johnson*, 488 F.2d at 718. The Court makes such determination from its experience as a lawyer and as a judge. *See id.* From the Court's observation, Petitioner indeed hired learned counsel who successfully helped her secure the return of her minor children. Petitioner's attorneys delivered quality and professional work.

### d. *Preclusion of other employment by the attorneys due to acceptance of the case*

Petitioner represents that her counsel were "precluded from accepting other employment in other matters as a result of the time intensive nature of this case." However, the assertion

---

[2] *See* U.S. Hague Convention Treaty Partners, *available at* https://travel.state.gov/content/travel/en/International-Parental-Child-Abduction/abductions/hague-abduction-country-list.html (last visited February 3, 2018).

[3] The only area where Thai law is relevant in this case is whether the Mother has custody rights in Thailand. Because the answer to this question is not readily available for U.S. counsel, Petitioner rightfully retained a Thai law expert for this issue and reasonably paid $2,500.00 for Mr. Phongordete's legal service.

7

regarding preclusion of other employment by Petitioner's attorneys due to acceptance of this case is conclusory and does not indicate any alteration of counsels' business other than simply filling the attorneys' workloads.

        *e.*  *The customary fee charged for services in the relevant community*

The Fifth Circuit has held that when an attorney's customary billing rate is the rate at which the attorney requests the lodestar be computed and that rate is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed. *See Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir.1995). A reasonable hourly rate is defined as the prevailing market rate, in the relevant legal community, for similar services by attorneys of reasonably comparable skill, experience and reputation. *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citation omitted).

From the Court's experience, Petitioner's attorneys' rates, ranging from $355.00 to $550.00, are reasonable. Mr. Stern's practice is based in New Orleans, and his rate of $410.00 per hour is typical for partners in this community. Mr. Cullen and his associates are based in Washington, D.C. and billed at relatively higher rates. Nonetheless, their rates—even compared to the local market here—is not unreasonable *per se* given their specialty and training in international custody and parent rights cases. For reference, five years ago, the Fifth Circuit affirmed an attorney's rate of $450.00 per hour in a Hague Convention case filed in the Southern District of Texas. *See Salazar*, 750 F.3d at 523. According to Petitioner, who is a resident of Thailand and foreign to the U.S. legal system, she hired counsel from Washington, D.C. because she could not locate a lawyer in New Orleans who specializes in Hague Convention cases. Indeed, based on the Court's knowledge, Hague Convention cases are rarely filed in the Eastern District of Louisiana: the Court's docket only reveals six other Hague Convention cases filed in the past

8

five years. Therefore, the Court finds that Petitioner rationally hired an out-of-state law firm for her high stakes case, and her attorney's rates are reasonable given their specialized practice, skill, experience and reputation.

### f. *Whether the fee is fixed or contingent*

With the exception of Mr. Phongordete, who charged a flat fee for his legal service in the area of Thai law, other attorneys charged an hourly rate ranging from $355.00 to $550.00.

### g. *Time limitations imposed by the client or circumstances*

As mentioned above, Hague Convention cases, such as this one, are expedited in nature. This case was filed and resolved within eight weeks.

### h. *Amount involved and the results obtained*

Petitioner achieved her desired outcome: the return of her two children to Thailand.

### i. *Experience, reputation, and ability of the attorneys*

Petitioner's attorneys are skilled and very capable professionals, and produced quality work.

### j. *The "undesirability" of the case*

Petitioner's case is a typical Hague Convention case and attorneys were compensated at an hourly rate, regardless of the result. Thus, this factor is neutral.

### k. *The nature and length of the professional relationship with the client*

This factor was designed to consider those instances in which an attorney in private practice may vary his or her fee for similar work in light of the professional relationship with the client. Since Petitioner's case is a one-time matter, this *Johnson* factor is irrelevant.

*l.      Awards in similar cases*

The Court's research has revealed a wide range of awards in Hague Convention cases based on different rates and time logged. *See e.g.*, *Salazar*, 750 F.3d at 523 (affirming an award of $39,079.13 for attorney's fees and expenses after district court reduced award by half from $75,149.91); *Kufner v. Kufner*, No. C.A. 07-46S, 2007 WL 1521248, at *3 (D.R.I. May 23, 2007) (awarding $248,811.00 for attorney's fees and $105,906.06 for expenses and costs); *Olesen-Frayne v. Olesen*, No. 2:09-cv-49-FTM-29DNF, 2009 WL 3048451, at *2 (M.D. Fla. Sept. 21, 2009) (awarding $109,542.50 for attorney's fees and $11,314.10 for expenses); *Wasniewski v. Grzelak-Johannsen*, 549 F. Supp. 2d 965, 980–81 (N.D. Ohio 2008) (awarding $117,890.73 for attorney's fees and expenses); *Chafin v. Chafin*, No. CV-11-J-1461-NE, 2012 WL 12893523 (N.D. Ala. Mar. 7, 2012) (finding $85,580.00 in attorney's fees, including the value of *pro bono* time reasonable and awarded to the petitioner); *Knigge ex rel Corvese v. Corvese*, No. 01 CIV. 5743 (DLC), 2001 WL 883644, at *5 (S.D.N.Y. Aug. 6, 2001) (awarding $44,463.60 for attorney's fees); *Neves v. Neves*, 637 F. Supp. 2d 322, 347–48 (W.D.N.C. 2009) (awarding $39,999.36 for attorney's fees and expenses); *Fuentes-Rangel v. Woodman*, No. 2:14-cv-00005-WCO, 2015 WL 12999707, at *4 (N.D. Ga. July 29, 2015) (awarding $37,600.00 for attorney's fees and expenses); *Ostos v. Vega*, No. 3:14-cv-3935-L, 2016 WL 1170830, at *3 (N.D. Tex. Mar. 25, 2016) (awarding $37,194.71 for attorney's fees and expenses).

Moreover, courts have discretion under ICARA to reduce or even eliminate a respondent's obligation to pay a prevailing petitioner's attorney's fees and costs where such an award "would be clearly inappropriate." *Distler v. Distler*, 26 F. Supp. 2d 723, 729 (D.N.J. 1998) (quoting 42 U.S.C. § 11607(b)(3)); *see, e.g.*, *Silverman v. Silverman*, No. Civ. 00–2274 JRT, 2004 WL 2066778, at *4 (D. Minn. Aug. 26, 2004) (eliminating fee where respondent had no ability to pay,

and prevailing petitioner did not abide by prior court orders, had failed to support children financially in the past, and had been physically and mentally abusive to respondent); *Rydder v. Rydder*, 49 F.3d 369, 373–74 (8th Cir. 1995) (reducing fee award by 46% due to respondent's "straitened financial circumstances"); *Berendsen v. Nichols*, 938 F. Supp. 737, 739 (D. Kan. 1996) (reducing award by 15% in light of respondent's financial condition and because awarding full fee would unduly limit respondent's ability to support his children); *Willing v. Purtill*, No. CIV. 07-1618-AA, 2008 WL 299073, at *1 (D. Or. Jan. 31, 2008) (reducing fee award by 15% due to respondent's financial circumstances, particularly his unemployment).

2. Application to Case at Bar

Generally, Hague Convention cases are heavily fact-specific and presents diverse scenarios that demand different degrees of legal services. Setting a reasonable attorney's fee for this type of case presents a unique challenge. Nonetheless, considering the lodestar method and *Johnson* factors described above, the Court concludes that Petitioner's attorney's fees of $75,963.50 is reasonable. Moreover, this figure is comparable to Respondent's very own litigation fees and costs, which he declares as $52,943.40.[4] Rec. Doc. 58-3. Respondent never stated with particularity his own local counsel's billing rates or the hours his counsel expended in this case. Nonetheless, given Mr. Cullen and his firm's expertise in Hague Convention cases and considering the additional work required to file an ICARA case, the Court acknowledges that the slight difference in attorney's fees and hours between Petitioner and Respondent is appropriate.

Adding Petitioner's attorney's fees of $75,963.50 to her court costs of $1,098.50 and travel costs of $10,253.81, the Court finds that Petitioner should receive $89,310.08.

---

[4] The Court presumes that Respondent does not have any travel cost because he was a resident in this District at the time of trial. Moreover, Respondent did not have any court filing fees or *pro hac vice* application fees.

Nevertheless, ICARA gives courts the discretion to reduce or even eliminate a respondent's obligation to pay a prevailing petitioner's attorney's fees and costs where such an award "would be clearly inappropriate." *Distler*, 26 F. Supp. 2d at 729 (quoting 42 U.S.C. § 11607(b)(3)). The Court must now determine whether such reduction is warranted for Respondent.

### B. Respondent's Request to Reduce or Eliminate Award of Attorney's Fees and Costs

Respondent argues that an award for attorney's fees and costs is clearly inappropriate because it would create an undue burden on him. Respondent claims that he has no "savings, investments, or the promise of future income." Rec. Doc. 58 at 16. Respondent was unemployed from 2011 to August 2017; he enrolled in school for a few years while he was in Thailand. He recently resigned his job as a teacher in New Orleans so he can return to Thailand with the children. His teaching position paid an annual salary of $35,014.30.[5] According to Respondent, he relies on "secured and unsecured loans for living expenses and litigation expenses incurred in this case." *Id.* at 17. He declares that he has a negative net worth of $81,914.40. Rec. Doc. 58-3. On the other hand, Respondent calls Petitioner the "only breadwinner in the family." Rec. Doc. 58-1 at 16. Petitioner is a partner at a venture capitalist firm and earns over $100,000.00 per annum.

This Court has discretion to reduce or eliminate Respondent's obligation to pay an award for Petitioner's attorney's fees and costs if such award "would be clearly inappropriate." *Distler*, 26 F. Supp. 2d at 729 (quoting 42 U.S.C. § 11607(b)(3)). "A review of the cases applying ICARA's "clearly inappropriate" caveat reveals that the analysis is highly fact specific and involves an equitable balancing of several factors including financial circumstances." *Kufner v. Kufner*, No. CIV.A. 07-046 S, 2010 WL 431762, at *5 (D.R.I. Feb. 3, 2010) (citing *Neves v. Neves*,

---

[5] Respondent worked in this teaching capacity from August 1, 2017 to March 1, 2018 before he resigned. He has earned $20,494.88 during this period. Rec. Doc. 58-1 at 16.

637 F.Supp.2d 322, 345 (W.D.N.C. 2009)). Among other factors, courts have considered "straitened financial circumstances," *see Rydder*, 49 F.3d at 373–74, and a respondent's responsibility to support his or her children, *see Berendsen*, 938 F. Supp. at 739, as reasons for reduction of an award for attorney's fees and costs. The burden is on Respondent to show that an award of attorney's fees and costs would be clearly inappropriate. *See Saldivar*, 879 F. Supp. 2d at 632.

At first blush, based on his own declaration of financial assets and liabilities, Respondent seems impoverished. Upon further review, however, the Court finds that Respondent's current financial situation is unclear and indications of financial hardship is partially self-inflicted. Based on Petitioner's testimony at trial, she repeatedly urged Respondent during their marriage to start a career. According to Petitioner, the marital discord is, to some extent, attributed to Respondent's lax attitude. After wrongfully retaining his children in New Orleans, Respondent and the children resided with the Father's family; the children's grandparents are both successful medical professionals in this community. In August 2017, Respondent secured a teaching position that pays $35,014.30. Recently, however, Respondent quit this job and returned to Thailand with his children. Although Respondent argues that he has no promise of future income, the record indicates that he is highly educated and has excellent communication and teaching skills. Respondent is capable of attaining employment based on his recent position as a teacher and his university studies in Thailand. The record is not clear about Respondent's financial income. For instance, despite being unemployed in Thailand and even after separation with Petitioner, Respondent was able to lease his own apartment unit, travel, and satisfy daily needs.[6] Furthermore,

---

[6] This Court had ordered the Father to state "his income, any financial assets, necessary expenses, and his out-of-pocket litigation fees and costs associated with this lawsuit." Rec. Doc. 52. However, as Petitioner points out, the Father's financial summary statement creates

13

while Petitioner was in Louisiana for the instant proceeding, Respondent served the Mother with a petition for divorce in the Civil District for the Parish of Orleans in the State of Louisiana. It is conceivable that Respondent may receive alimony or monetary gains from a divorce with Petitioner, whom he recognizes as the breadwinner in the family.

Finally, in fashioning an award for attorney's fees and costs, the Court must give effect to the purpose behind the Hague Convention and ICARA's one-way fee shifting statute, which provides an award of necessary fees and expenses to the prevailing petitioner. Under the Hague Convention, an award of fees and costs serves two purposes: (1) "to restore the applicant to the financial position he or she would have been in had there been no removal or retention," and (2) "to deter such removal or retention." Hague Convention; Text and Legal Analysis, 51 Fed. Reg. 10494–01, 10511 (Mar. 26, 1986). Respondent is the wrongdoer in this case: he inappropriately retained the children from their Mother without her consent; later, he launched an unfounded smear attack on Petitioner and accused her of child abuse. His actions amassed hefty litigation expenses on both parties. To completely eliminate the award of attorney's fees and costs runs afoul of the Hague Convention's goal of deterring such wrongful removal or retention. The Court cannot turn a blind eye to such inequality.

C. **Award of Attorney's Fees and Costs**

Accounting for all the aforementioned reasons, the Court concludes that Petitioner's attorney's fees and costs of $89,310.08 is reasonable. Nonetheless, considering the financial status of both parties and the facts in this case, the Court hereby apportions this amount between Petitioner and Respondent. Petitioner shall bear two-thirds of her attorney's fees and costs, for a

---

more questions than answers. It does not explain how his allegedly insolvent status affords him a relatively comfortable lifestyle.

grand total of $59,540.05. Respondent shall bear one-third of Petitioner's attorney's fees and costs, for a grand total of $29,770.03.

## IV.     CONCLUSION

Based on the foregoing reasons, accordingly,

**IT IS ORDERED** that the parties' cross motions on attorney's fees and costs (Rec. Docs. 57 & 58) are hereby **GRANTED IN PART** and **DENIED IN PART**. Pursuant to 42 U.S.C. § 11607(b)(3), Petitioner shall bear two-thirds of her attorney's fees and costs, for a grand total of $59,540.05. Respondent shall bear one-third of Petitioner's attorney's fees and costs, for a grand total of $29,770.03.

New Orleans, Louisiana, this 5th day of April, 2018.

_____
**ELDON E. FALLON**
United States District Judge